

**Furman Kornfeld & Brennan LLP**

570 Taxter Road, 5th Floor, Elmsford, NY 10523
Tel: 914-920-4000  Fax: 914-347-3898
www.fkblaw.com

Defendant's November 25, 2020, pre-motion letter in anticipation of a motion to compel is construed as a motion to compel and is **DENIED** as untimely.  Pursuant to the Third Amended Civil Case Management Plan and Scheduling Order, the parties' deadline to complete all fact discovery was November 6, 2020 (Dkt. No. 36).

Dated: November 30, 2020
New York, New York

*LORNA G. SCHOFIELD*
*UNITED STATES DISTRICT JUDGE*

*VIA ECF*
Judge Lorna G Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    Starr Indemnity & Liability Company v. North American Risk Services, Inc.
       Docket No.: 20-CV-546 (LGS)

Dear Judge Schofield:

The undersigned represents Defendant, North American Risk Services, Inc. ("NARS"), in the above-captioned matter.  Pursuant to Your Honor's Individual Practice Rules, we are writing to request a pre-motion conference to address Plaintiff, Starr Indemnity & Liability Company's ("Starr") refusal to respond and/or provide complete responses to NARS' local Rule 33.3(c) interrogatories and to request that Your Honor issue an Order compelling Starr to completely and fully respond to same prior to Defendant having to provide expert disclosure.

By way of background, on October 5, 2020, NARS served Starr with local Rule 33.3(c) "contention" interrogatories, which are annexed hereto as ***Exhibit "A."***  On November 4, 2020, Starr served purported responses to NARS' interrogatories, which are annexed hereto as ***Exhibit "B."***  Starr's refused to provide responses and/or complete responses to Defendant's interrogatories as follows:

- ***Interrogatories 1, 5, and 12*** – NARS' interrogatories requested that Starr set forth its contentions, in detail regarding how the timeliness of reservation of rights letters issued by NARS proximately caused Starr damages. Starr's responses did not provide any explanation of its contentions regarding the proximate causation element of their claims.
- ***Interrogatories 2, 6 and 13*** – NARS' interrogatories requested that Starr identify the individuals/entities that Starr contends NARS failed to timely send reservation of rights letters to and for each individual/entity, set forth Starr's contentions as to when NARS allegedly should have first sent a reservations of right letter (i.e. when NARS should have become aware that potential coverage defenses existed). Starr's responses were incomplete as they did not explain or identify Starr's contentions as to when it claims NARS should have sent out the reservation of rights letters and/or the specific individuals/entities that those reservations of rights letters should have been sent to.
- ***Interrogatories 4,8, 15, 16, 17, 18, 19, 20, 21, 22 and 23*** – NARS' interrogatories requested that Starr specify and explain its claims regarding the identity and amount of damages it alleged it sustained as a result of NARS' purported conduct.  However, Starr wholly refused to provide responses to these interrogatories claiming they seek information that is not permitted under Local Rule 33.3(c).

Upon receipt of the Starr's incomplete responses, NARS immediately requested a "meet and confer" call with Plaintiff's counsel. On November 16, 2020, the parties participated in a "meet and confer" telephone call to discuss Starr's responses.  After a substantive discussion, Starr's counsel requested that the undersigned email him a list of NARS' specific concerns and that he would provide a response in a couple of days.  NARS complied and sent Starr's counsel an email on that same date. After following up with Starr's counsel, on November 23, 2020, Starr's counsel finally sent the undersigned, an email, annexed hereto as ***Exhibit "C"*** with Starr's responses to NARS' request to supplement its responses to NARS' interrogatories.

In sum, in his email, Starr's counsel stated that Starr maintained its refusal to provide any responses to Interrogatories 4,8, 15, 16, 17, 18, 19, 20, 21, 22 and 23.  Starr refused to provide NARS with the requested facts supporting Starr's damages claims and refused to identify or explain Starr's contentions regarding the amounts and identity of damages Starr allegedly suffered as a result of NARS' conduct.

With respect to Interrogatories 1, 5 and 12, which asked Starr to set forth its contentions supporting the proximate causation element of its claims, Starr refused to provide any formal supplemental response, vaguely claiming "it is for the trier of fact to determine the issue of proximate cause [and] the issue of proximate cause may be decided as a matter of law where only one conclusion may be drawn from the established facts." Starr's counsel's letter merely repeated its overly vague and broad claim that "the failure of NARS to issue and/or update the reservation of rights letters coupled with the uncertainty of South Carolina law concerning the effect of same, forced Starr into a position of having to cover the subject claims." To date, through fact discovery, Starr has never clearly set forth any specific contentions or facts explaining how the timeliness of the letters impacted Starr's coverage position.  Starr's informal email response still does not identify, with any specificity, the facts supporting its contentions regarding proximate causation. Starr's responses do not identify the alleged "uncertainty of South Carolina law," why that purported "uncertainty" affect Starr's alleged ability to deny coverage and/or who Starr was allegedly forced to provide coverage for as a result of the alleged untimely reservation of rights letters. *Starr's contentions regarding these claims remain especially unclear in light of sworn testimony of two of Starr's own witnesses in a related arbitration that the timeliness of the reservation of rights letters had "no effect" on coverage.*

Likewise, Starr also refused to formally supplement its responses to Interrogatories 2, 6 and 13.  Starr's counsel's informal email response only vaguely stated that "the failure of NARS to send and/or update the reservation of rights letters until October 13, 2015, to Ocean Keyes Development and April 4, 2017, to Keye Construction and Baltzer were sufficient delays to raise a question as to the timeliness of same under South Carolina law," is not actually responsive to Interrogatories 2, 6 and 13, which ask Starr to set forth its contentions regarding the identity of who Starr claims NARS failed to timely send a reservation of rights letter to and for each individual/entity to set forth its contentions regarding when it claims NARS should have first sent a reservation of rights letter (when coverage defenses first became evident in each of the

*Starr Indemnity & Liability Company v. North American Risk Services, Inc.*
*Docket No.: 20-CV-546 (LGS)*
Page 3 of 3

underlying claims). Starr's responses should have been detailed and separate for each of the three underlying claims – Beach Villas. Lakeside and Seashore. That Starr's responses are actually responsive is highlighted by the fact that no reservation of rights letters were ever mailed on or around October 13, 2015 in the Lakeside or Seashore matters. The general and non-specific, informal response provided in Starr's counsel's email does not appropriately or completely respond to NARS' interrogatories.

NARS served the aforementioned interrogatories, appropriately, pursuant to local Rule 33.3 (c), in order to obtain a clear explanation of the claims raised in Starr's Complaint and reduce the high possibility of surprise at trial. It is NARS position that these interrogatories request discoverable information that Starr is obligated to disclose. Starr's continued refusal to provide NARS with the discoverable information regarding its claims greatly prejudices NARS' ability to defend against Starr's claims, has hampered NARS' ability to have expert witnesses opine on Plaintiff's claims and will result in surprise at trial. As a matter of law, Starr is required to identify its claims and contentions clearly in this action and point to the facts, witnesses, or documents that support the claims. *See* Rule 33.3(c); *Wechsler v. Hunt Health Sys., Ltd.,* No. 94 CIV. 8294 PKL, 1999 WL 672902, at *1–2 (S.D.N.Y. Aug. 27, 1999).

Accordingly, NARS respectfully requests that Your Honor issue an Order directing Starr to provide complete, specific and formal responses to NARS' interrogatories 1, 2, 4, 5, 6, 8, 12, 13, 15, 16, 17, 18, 19, 20, 21, 22 and 23 as set forth above prior to NARS having to provide expert disclosure in this matter.

Respectfully submitted,

*Shari Sckolnick*

Andrew Kowlowitz
Shari Sckolnick

cc:     All Counsel of record via ECF

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
STARR INDEMNITY & LIABILITY COMPANY,  :
              :  Case No.: 20-CV-546
        Plaintiff,  :
  -against-        :
              :
NORTH AMERICAN RISK SERVICES, INC.,  :
              :
        Defendant.  :
------------------------------------------------------------------------ x

### DEFENDANT, NORTH AMERICAN RISK SERVICES, INC.'S LOCAL RULE 33.3(C) CONTENTION INTERROGATORIES TO PLAINTIFF STARR INDEMNITY & LIABILITY COMPANY

   **PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant, NORTH AMERICAN RISK SERVICES, INC. ("Defendant" or "NARS"), by its attorneys, FURMAN KORNFELD & BRENNAN LLP, hereby demands that Plaintiff, Starr Indemnity & Liability Company ("Plaintiff" or "STARR") serve answers, under oath, within thirty (30) days of service of this request.

   **PLEASE TAKE FURTHER NOTICE** that these requests are continuing in nature and require that you produce all responsive documents which are obtained after the time of initial production in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

### I. DEFINITIONS

   Unless specifically indicated, or otherwise required by the context in which the terms, names, and instructions are used, the following definitions shall be applicable herein:

   1.  "Starr" or Plaintiff" refers to Plaintiff, Starr Indemnity & Liability Company and its officers, agents, employees, attorneys, representatives, predecessors, successors, principals,

partners, members, parents, subsidiaries, affiliates. or other persons or entities that otherwise act, acted or are acting by, through or on its behalf

2.      "NARS" or "Defendant" refers to Defendant, North American Risk Services, Inc, and its officers, agents, employees, attorneys, representatives, predecessors, successors, principals, partners, members, parents, subsidiaries, affiliates. or other persons or entities that otherwise act, acted or are acting by, through or on its behalf

3.      "Complaint" refers to the Complaint filed by Plaintiff in this action, on or about January 21, 2020.

4.      The "Beach Villas Action" refers to the lawsuit captioned, B*each Villas at Ocean Keyes Property Owners Association, Inc. v. Ocean Keyes Development, LLC, et al.*, 2014 CP26 6573, filed on October 7, 2014, including but not limited to all pre-suit Notice of Claims or other written demands, and all related litigation.

5.      The "Harper Action" refers to the lawsuit captioned, Ha*rper Ocean Keys, LLC, et al. v. Ocean Keys Development, LC, et al.*, 2015 CP26 4599, filed on June 18, 2015, including but not limited to all pre-suit Notice of Claims or other written demands, and all related litigation.

6.      The "Lakeside Action" refers to the lawsuit captioned, *Lakeside Townhomes at Ocean Keyes Horizontal Property Regime, Inc., et al. v. Ocean Keyes Development, LLC, et al.*, 2105 CP26 5585, filed on July 24, 2015, including but not limited to all pre-suit Notice of Claims or other written demands, and all related litigation.

7.      The "Seashore Villas Action" refers to the lawsuit captioned, *Seashore Villas at Ocean Keyes Property Owners Association, Inc. v. Ocean Keyes Development, LLC, et al*., 2015 CP26 8308, filed on November 18, 2015, including but not limited to all pre-suit Notice of Claims or other written demands, and all related litigation.

8.      The "Underlying Ocean Keyes Matters" refer to the Beach Villas Action, the Harper Action, the Lakeside Action and the Seashore Villas Action, collectively.

9.      The "Declaratory Judgment Action" refers to lawsuit captioned *Starr Indemnity & Liability Company v. Ocean Keyes Development LLC, Russell Baltzer, Keye Construction Co., Inc., Beach Villas at Ocean Keyes Property Owners Association, Inc., Seashore Villas at Ocean Keyes Property Owners Association, Inc., Lakeside Townhomes at Ocean Keyes Horizontal Property Regime, Inc., and Lakeside Townhomes at Ocean Keyes Property Owners Association, Inc., No. 4:17-cv-00857 (D.S.C., filed March 31, 2017).*

10.     "Arbitration" refers to the arbitration between Starr, as petitioner, and Johnson & Johnson, Inc., as respondent, wherein a hearing was held on July 24 and 25, 2019 and a Final Decision and Award, was rendered on November 20, 2019.

11.     The "Starr Policies" collectively refer to the commercial general liability policies issued by STARR, policy number SIJJGL007498 - 00, effective from June 29, 2012, to June 29, 2013, and policy number SIJJGL007498- 01, effective from June 29, 2013, to June 29, 2014, to Ocean Keyes Development LLC.

12.     The term "document(s)" and "documentation" shall be construed in the broadest sense possible under applicable rules, and mean and refer to, without limitation, every writing, record and tangible thing of every type and description, however produced or reproduced, whether written, printed, typed, recorded, taped, photographed, or electronically or magnetically recorded or stored, or recorded upon any tangible thing, or stored in any retrievable form, by any means of communication, representation or data generation or retention, whether sent or received or neither, originals (both sides thereof), drafts, copies, copies not identical with the original or another copy, and any material underlying, supporting, or used in the preparation thereof, now or at any time in

the possession, custody or control of the Settling Parties, whether or not prepared by the Settling

Parties, including without limitation: writings; correspondence; records; agreements; contracts;

studies; reports; transcripts; exhibits; pleadings; memoranda; court decisions; e-mails; tables;

charts; graphs; reports; notes and notations; telegrams; telexes; telefax transmittals; cables;

messages; journals; journal entries; diaries; diary entries; desk calendars; appointment books;

invoices; canceled checks; memoranda, including without limitation intra- and inter-office

memoranda; intra- and inter-office communications; accounts; financial statements; papers;

brochures; articles; statements; letters; telephone message pads or slips; memoranda, notes,

recordings, or jottings of telephone conversations, other conversations, discussions, agreements,

acts, meetings, conferences or activities of any kind or nature; log books; computer tapes;

computer disks or printouts; tape recordings; books; accounting records; agendas; bulletins;

brochures; manuals; schedules; accounts; ledgers; commercial paper; work papers; minutes;

affidavits; opinions; evaluations; analyses; studies; summaries; notices; transmittal documents;

addenda; bills of lading; airbills; freight bills; microfilms; microfiches; records kept by any

photographic, mechanical, magnetic or electronic means; any notes, summaries or drafts relating

to any of the foregoing; and any and all other tangible things or media containing information or

from which information can be obtained.  This includes, without limitation, computer output and

input, including data on hard or floppy disks, standard CD-ROMs, recordable/read write CD-

ROMs, and optical read/write CD-ROMs, disks from ZIP drives and cartridges and cassettes from

tape back-up devices, electronic messages (e-mail), and other electronic communications that may

or may not be reduced to hard copy in the normal course of business and which may be stored or

archived on file servers, hard drives, hard or floppy disks or diskettes, back-up tapes, USB drives,

or other storage media.  When an electronic or computerized data compilation is produced, the document shall be produced in both electronic and paper form.

13.    "Document(s)" and "documentation" further mean and include the original and every non-identical or non-exact copy of such documents of whatever date; copies containing any commentary or notations of any kind that do not appear in the original; drafts; revisions; handwritten and typed versions; and earlier or later versions.

14.    "Communicate" or "communication(s)" shall be construed in the broadest sense possible under applicable rules and mean and refer to each and every transmittal, exchange, or receipt of fact, information, ideas, inquiries, opinion or thought, whether formal or informal, and whether made orally, in writing, or otherwise, including, without limitation, any and all electronic forms of communication, documents incorporating, summarizing or describing the contents of the transmission, meetings and discussions, telephone conversations, telegraphic communications, or any document containing a recording, transcription, summary or description or identifying the time, place, subject matter, medium of transmission and/or participants in the transmission, drafts of all communications and final versions thereof.

15.    "Concerning" means referring to, describing, evidencing, constituting, summarizing, reflecting, embodying, memorializing, containing, documenting, mentioning, discussing, commenting on, or having any logical or factual connection whatsoever with the subject matter in question.

16.    "Relating to" and "relate to" means referring to, describing, evidencing, constituting, summarizing, reflecting, embodying, memorializing, containing, documenting, mentioning, discussing, commenting on, or having any logical or factual connection whatsoever with the subject matter in question.

17. "Correspondence" means and refers to any written communication, whether printed, recorded, computerized, reproduced by any process, or written or produced by hand, and includes, without limitation, any letters, memoranda, emails, and other electronic forms of communication.

18. "And" and "or" shall be construed either conjunctively or disjunctively so as to bring within the scope of these requests any and all information or documents which might otherwise be construed beyond their scope.

19. "All" shall be construed as "any and all," the term "any" shall be construed as "any and all," and the term "each" shall be construed as "all and each," so as to bring within the scope of these requests any and all information or documents which might otherwise be construed beyond their scope.

20. The use of the singular shall include the plural and the use of the plural shall include the singular.

21. "Include" and "including" are illustrative and are in no way a limitation of the information or documentation requested.

22. The past tense includes the present tense where the meaning is not distorted and the verb form of a noun or pronoun may be used, as appropriate in a particular context.

23. "Date" means the exact day, month, and year, if ascertainable, or if not, the best available approximation (including its relationship to other events).

24. "Person" is defined as any natural person or any business, legal, or governmental entity or association, including without limitation all predecessors in interest, groups, associations, partnerships, corporations, or agencies.

## II. <u>INSTRUCTIONS</u>

1.       In answering these interrogatories, you are requested to furnish all information known or available to you, regardless of whether this information is possessed by you or by your agents, employees, representatives, investigators, or by your attorneys or other persons who have acted on your behalf, or by any corporation, partnership, or other legal entity.

2.       If any of these interrogatories cannot be answered in full, after exercising due diligence to secure the information to do so, answer to the extent possible, specifying the reasons for your inability to answer the remainder and stating whatever information, knowledge, or belief you do have concerning the unanswered portion.  In addition, specify the person or persons you have reason to believe may have the information and/or knowledge to answer such interrogatory or any part thereof.

3.       The interrogatories are continuing in nature, and if, after answering interrogatories, you obtain or become aware of further information responsive to these interrogatories, you are required to make a supplemental interrogatory answer(s).

4.       State whether the information furnished is within your personal knowledge, and, if not, the name of each person to whom the information is a matter of personal knowledge, if known.

5.       Whenever an interrogatory asks for the identity of certain documents, please set forth the following information:

(a)       The date;

(b)       The title;

(c)       The authors;

(d)       The subject matter;

(e)       The name and address of each recipient of the documents; and

(f)  The name and address of each person or entity presently having possession, custody, or control of the same.

6.  When an interrogatory asks for the identity of an individual, please set forth the following information:

(a)  The individual's name;

(b)  The individual's title or occupation;

(c)  The individual's present or last known residence address; and

(d)  The individual's present or last known business address.

7.  If any interrogatory is deemed to call for the production of privileged or otherwise protected information or materials, you must provide the following information in a written response, designating and identifying those documents or information withheld from production on grounds of privilege:

(a)  The reason for withholding the document or information;

(b)  A statement of the legal basis for the claim of privilege, work product or other ground for non-disclosure;

(c)  If a document, a brief description of the document, including:

(i)  The date of the document;

(ii)  Number of pages, attachments and appendices;

(iii)  The name(s) of its author(s) or preparer(s) and an identification by employment and title of each such person;

(iv)  The name of each person who was sent, shown or copied with the document, or has had access to or custody of the document, together with an identification of each such person;

(v)     The present custodian; and

(vi)    The subject matter of the document, and in the case of any document relating or referring to a meeting or conversation, identification of such meeting or conversation, in sufficient detail to enable the Court to determine the propriety of any claim of privilege.

8.      If you maintain that any document or record that refers to or relates to anything about which these Interrogatories ask has been destroyed, set forth the content of that document, the location of any copies of that document, the date of the destruction, and the name of the person who ordered or authorized the destruction.

9.      The answer to each Interrogatory should be preceded by identification and verbatim quote of the Interrogatory to which the answer responds. A separate answer should be given to each Interrogatory and Interrogatories should not be joined by a common answer.

10.     Each Interrogatory should be construed independently. No Interrogatory should be construed by reference to any other Interrogatory for the purpose of limiting the scope of the answer to such Interrogatory.

11.     Any Electronically Stored Information ("ESI") produced in response to these Interrogatories shall be in a format to be agreed upon by the parties or, in the absence of any agreement, as ordered by the Court.

### III.    RULE 33.3(C) INTERROGATORIES

1.      Set for and describe how NARS' alleged failure to send reservation of rights letters and/or failure to update reservation of rights letters with respect to the Beach Villas Action caused Plaintiff damage.

2.      With respect to the Beach Villas Action, set forth the names of each individual or entity that Starr claims NARS failed to send or timely send a reservation of rights letter to and for each individual or entity, state when Starr claims NARS should have first sent a reservation of rights letter.

3.      Set forth the basis of Starr's contention that if NARS had issued a reservation of rights letter to Ocean Keyes Development, Inc. with respect to the Beach Villas Action earlier, Starr could have paid a smaller or no indemnity payment to settle the Beach Villas Action. To the extent Starr alleges it could have made a smaller indemnity payment to settle the Beach Villas Action, set forth the amount of the reduced indemnity payment that Starr alleges it could have paid to settle the Beach Villas Action.

4.      Set forth and itemize each of the defense costs Starr allegedly had to pay as a result of NARS' alleged failure to send reservation of rights letters and/or failure to update reservation of rights letters with respect to the Beach Villas Action.

5.      Set for and describe how NARS' alleged failure to send reservation of rights letters and/or failure to update reservation of rights letters with respect to the Lakeside Action caused Plaintiff damage.

6.      With respect to the Lakeside Action, set forth the names of each individual or entity that Starr claims NARS failed to send or timely send a reservation of rights letter to and for each individual or entity, state when Starr claims NARS should have first sent a reservation of rights letter.

7.      Set forth the basis of Starr's contention that if NARS had issued a reservation of rights letter to Ocean Keyes Development, Inc. with respect to the Lakeside Action earlier, Starr could have paid a smaller or no indemnity payment to settle the Lakeside Action. To the extent

Starr alleges it could have made a smaller indemnity payment to settle the Lakeside Action, set forth the amount of the reduced indemnity payment that Starr alleges it could have paid to settle the Lakeside Action.

8.      Set forth and itemize each of the defense costs Starr allegedly had to pay as a result of NARS' alleged failure to send reservation of rights letters and/or failure to update reservation of rights letters with respect to the Lakeside Action.

9.      Set for and describe how NARS' alleged failure to send reservation of rights letters and/or failure to update reservation of rights letters with respect to the Harper Action caused Plaintiff damage.

10.     With respect to the Harper Action, set forth the names of each individual or entity that Starr claims NARS failed to send or timely send a reservation of rights letter to and for each individual or entity, state when Starr claims NARS should have first sent a reservation of rights letter.

11.     Set forth and itemize each of the defense costs Starr allegedly had to pay as a result of NARS' alleged failure to send reservation of rights letters and/or failure to update reservation of rights letters with respect to the Harper Action.

12.     Set forth and describe how NARS' alleged failure to send reservation of rights letters and/or failure to update reservation of rights letters with respect to the Seashore Action caused Plaintiff damage.

13.     With respect to the Seashore Action, set forth the names of each individual or entity that Starr claims NARS failed to send or timely send a reservation of rights letter to and for each individual or entity, state when Starr claims NARS should have first sent a reservation of rights letter.

14.     Set forth the basis of Starr's contention that if NARS had issued a reservation of rights letter to Ocean Keyes Development, Inc. with respect to the Seashore Action earlier, Starr could have paid a smaller or no indemnity payment to settle the Seashore Action. To the extent Starr alleges it could have made a smaller indemnity payment to settle the Seashore Action, set forth the amount of the reduced indemnity payment that Starr alleges it could have paid to settle the Seashore Action.

15.     Set forth and itemize each of the defense costs Starr allegedly had to pay as a result of NARS' alleged failure to send reservation of rights letters and/or failure to update reservation of rights letters with respect to the Seashore Action.

16.     Set forth and itemize each of the attorneys' fees and expenses that Starr alleges NARS improperly paid to defend Keye Construction, Inc. in the Underlying Ocean Keyes Matters

17.     Set forth and itemize each of the attorneys' fees and expenses that Starr alleges NARS improperly paid to defend Russel Baltzer in the Underlying Ocean Keyes Matters

18.     Set forth and itemize each of the attorneys' fees and expenses that Starr alleges NARS improperly paid to defend Marc Hyman in the Underlying Ocean Keyes Matters

19.     To the extent not set forth and itemized in response to Demands Numbers 16, 17 and 18 *supra*, set forth and itemize any additional attorney's fees and/or expenses that Starr contends that NARS improperly paid with respect to the Underlying Ocean Keyes Matters

20.     With respect to the Beach Villas Action, describe and itemize the damages Starr contends it incurred as a result of NARS allegedly failing to use Adair Horne & Associates as an independent adjuster.

21.     With respect to the Lakside Action, describe and itemize the damages Starr contends it incurred as a result of NARS allegedly failing to use Adair Horne & Associates as an independent adjuster.

22.     With respect to the Harper Action, describe and itemize the damages Starr contends it incurred as a result of NARS allegedly failing to use Adair Horne & Associates as an independent adjuster.

23.     With respect to the Seashore Action, describe and itemize the damages Starr contends it incurred as a result of NARS allegedly failing to use Adair Horne & Associates as an independent adjuster.

**PLEASE TAKE FURTHER NOTICE** that in the event you fail to answer the demands within (30) days, Defendant will move to preclude the offering of any evidence as to the matters herein, together with the costs of such an application.

**PLEASE TAKE FURTHER NOTICE**, that this is a continuing demand, creating an ongoing obligation to furnish the above demanded information upon your acquisition of same, until conclusion of the litigation.

Dated:  New York, New York
         October 5, 2020

                              FURMAN KORNFELD & BRENNAN LLP

                              _Shari Sckolnick_
                              _____
                              By:  Andrew S. Kowlowitz, Esq.
                                   Shari Sckolnick, Esq.
                                   *Attorneys for Defendant*
                                   *North American Risk Services, Inc.*
                                   61 Broadway, 26th Floor
                                   New York, New York 10006
                                   FKB File No.: 315.013

To:

Starr Insurance Holdings, Inc.
*Attorneys for Plaintiff*
*Starr Indemnity & Liability Company*
399 Park Avenue, 3rd Floor
New York, New York 10022
Attn: Ross M. Chinitz, Esq.

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
STARR INDEMNITY & LIABILITY             :
COMPANY,                                :
                                        :
                        Plaintiff,      :
                                        :
           -against-                    :         Case No.: 20-CV-546 (LGS)
                                        :
NORTH AMERICAN RISK SERVICES, INC.,     :
                                        :
                        Defendant.      :
-------------------------------------------------------------X

**PLAINTIFF STARR INDEMNITY & LIABILITY
COMPANY'S RESPONSES AND OBJECTIONS TO
DEFENDANT NORTH AMERICAN RISK SERVICES, INC.'S
LOCAL RULE 33.3(C) CONTENTION INTERROGATORIES**

Plaintiff Starr Indemnity & Liability Company, by and through its undersigned counsel,

and pursuant to Local Rule 33.3(C), provides the following objections and answers in response

to Defendant's Contention Interrogatories.

### III. RULE 33.3(C) INTERROGATORIES

**Interrogatory No. 1**: Set forth and describe how NARS' alleged failure to send reservation of

rights letters and/or failure to update reservation of rights letters with respect to the Beach Villas

Action caused Plaintiff damage.

> **Response to Interrogatory No. 1**: There was uncertainty under South Carolina
>
> law, which governed the interpretation of the Starr Policies, concerning whether
>
> an insurer is estopped from, or has otherwise waived the right to assert coverage
>
> defenses, if the insurer fails to timely issue a reservation of rights addressing the
>
> coverage defenses at issue. In the Beach Villas Action, which was filed on
>
> October 7, 2014, NARS did not send out a reservation of rights letter to Ocean

> Keyes Development, LLC until January 11, 2017. NARS did not send out a
> reservation of rights letter to Keye Construction, Inc. and Russell Baltzer until
> April 4, 2017.

**Interrogatory No. 2**: With respect to the Beach Villas Action, set forth the names of each individual or entity that Starr claims NARS failed to send or timely send a reservation of rights letter to and for each individual or entity, state when Starr claims NARS should have first sent a reservation of rights letter.

> **Response to Interrogatory No. 2**:  At a minimum, NARS failed to send, or
> timely send, a reservation of rights letter to Ocean Keyes Development, LLC and
> Russell Baltzer. Additionally, NARS should have sent timely reservation of rights
> letters to any individual or entity that was an insured under the Starr Policies who
> was named as a defendant in the Beach Villas Action, and any individual or entity
> that could argue that it was an insured entitled to a defense and indemnification
> under the Starr Policies. NARS should have first sent a reservation of rights letter
> as soon as it became evident that a coverage defense or policy defense may exist.
> If there was a justifiable reason for the delay in sending the reservation of rights
> letter, that reason should have been documented in the claim file.

**Interrogatory No. 3**: Set forth the basis of Starr's contention that if NARS had issued a reservation of rights letter to Ocean Keyes Development, Inc. with respect to the Beach Villas Action earlier, Starr could have paid a smaller or no indemnity payment to settle the Beach Villas Action. To the extent Starr alleges it could have made a smaller indemnity payment to settle the Beach Villas Action, set forth the amount of the reduced indemnity payment that Starr alleges it could have paid to settle the Beach Villas Action.

**Response to Interrogatory No. 3**:  There was uncertainty under South Carolina law, which governed the interpretation of the Starr Policies, concerning whether an insurer is estopped from, or has otherwise waived the right to assert coverage defenses, if the insurer fails to timely issue a reservation of rights addressing the coverage defenses at issue. If NARS had raised the coverage issues sooner, Starr could have filed the Declaratory Judgment Action much earlier than it did and potentially paid nothing in indemnity. On the other hand, QBE Insurance Company, the carrier that insured Keye Real Estate, Inc. and Ocean Keyes Development, LLC for the two years immediately before Starr, resolved all of the Underlying Ocean Keyes Matters for a lump sum payment in the amount of $750,000.00, $1,737,500.00 less than Starr paid in indemnity. Starr paid $1,100,000.00 in indemnity to settle the Beach Villas Action, which was 44% of the total paid in indemnity to settle the Underlying Ocean Keyes Matters. If Starr paid the same $750,000.00 as QBE to resolve all of the Underlying Ocean Keyes Matters, and the percentage applied to each matter stayed the same, Starr would have paid $331,658.29 in indemnity to settle the Beach Villas Action, which is $768,341.71 less than it actually paid.

**Interrogatory No. 4**:  Set forth and itemize each of the defense costs Starr allegedly had to pay as a result of NARS' alleged failure to send reservation of rights letters and/or failure to update reservation of rights letters with respect to the Beach Villas Action.

**Response to Interrogatory No. 4**: Starr objects to this interrogatory as it seeks information that is not permitted under Local Civil Rule 33.3(C). In that regard, contention interrogatories are not to obtain facts, but rather to narrow the issues

that will be addressed at trial and to enable the propounding party to determine the proof required to rebut the respondent's position. This interrogatory request seeks to obtain facts, not contentions.

**Interrogatory No. 5**: Set forth and describe how NARS' alleged failure to send reservation of rights letters and/or failure to update reservation of rights letters with respect to the Lakeside Action caused Plaintiff damage.

> **Response to Interrogatory No. 5**:  There was uncertainty under South Carolina law, which governed the interpretation of the Starr Policies, concerning whether an insurer is estopped from, or has otherwise waived the right to assert coverage defenses, if the insurer fails to timely issue a reservation of rights addressing the coverage defenses at issue. In the Lakeside Action, which was filed on July 1, 2015, NARS sent out a reservation of rights letter to Ocean Keyes Development, LLC on October 13, 2015, but did not send out a reservation of rights letter to Keye Construction, Inc. and Russell Baltzer until April 4, 2017. NARS did not update the October 13, 2015 reservation of rights letter to Ocean Keyes Development, LLC until April 4, 2017.

**Interrogatory No. 6**: With respect to the Lakeside Action, set forth the names of each individual or entity that Starr claims NARS failed to send or timely send a reservation of rights letter to and for each individual or entity, state when Starr claims NARS should have first sent a reservation of rights letter.

> **Response to Interrogatory No. 6**:  At a minimum, NARS failed to send, or timely send, a reservation of rights letter to Russell Baltzer. Additionally, NARS should have sent timely reservation of rights letters to any individual or entity that

4

was an insured under the Starr Policies who was named as a defendant in the

Beach Villas Action, and any individual or entity that could argue that it was an

insured entitled to a defense and indemnification under the Starr Policies. NARS

should have first sent a reservation of rights letter as soon as it became evident

that a coverage defense or policy defense may exist. If there was a justifiable

reason for the delay in sending the reservation of rights letter, that reason should

have been documented in the claim file.

**Interrogatory No. 7**:  Set forth the basis of Starr's contention that if NARS had issued a reservation of

rights letter to Ocean Keyes Development, Inc. with respect to the Lakeside Action earlier, Starr could

have paid a smaller or no indemnity payment to settle the Lakeside Action. To the extent Starr alleges it

could have made a smaller indemnity payment to settle the Lakeside Action, set forth the amount

of the reduced indemnity payment that Starr alleges it could have paid to settle the Lakeside

Action.

> **Response to Interrogatory No. 7**:  There was uncertainty under South Carolina
>
> law, which governed the interpretation of the Starr Policies, concerning whether
>
> an insurer is estopped from, or has otherwise waived the right to assert coverage
>
> defenses, if the insurer fails to timely issue a reservation of rights addressing the
>
> coverage defenses at issue. If NARS had raised the coverage issues sooner, Starr
>
> could have filed the Declaratory Judgment Action much earlier than it did and
>
> potentially paid nothing in indemnity. On the other hand, QBE Insurance
>
> Company, the carrier that insured Keye Real Estate, Inc. and Ocean Keyes
>
> Development, LLC for the two years immediately before Starr, resolved all of the
>
> Underlying Ocean Keyes Matters for a lump sum payment in the amount of

$750,000.00, $1,737,500.00 less than Starr paid in indemnity. Starr paid $825,000.00 in indemnity to settle the Lakeside Action, which was 33% of the total paid in indemnity to settle the Underlying Ocean Keyes Matters. If Starr paid the same $750,000.00 as QBE to resolve all of the Underlying Ocean Keyes Matters, and the percentage applied to each matter stayed the same, Starr would have paid $248,743.72 in indemnity to settle the Lakeside Action, which is $576,256.28 less than it actually paid.

**Interrogatory No. 8**: Set forth and itemize each of the defense costs Starr allegedly had to pay as a result of NARS' alleged failure to send reservation of rights letters and/or failure to update reservation of rights letters with respect to the Lakeside Action.

> **Response to Interrogatory No. 8**: Starr objects to this interrogatory as it seeks information that is not permitted under Local Civil Rule 33.3(C). In that regard, contention interrogatories are not to obtain facts, but rather to narrow the issues that will be addressed at trial and to enable the propounding party to determine the proof required to rebut the respondent's position. This interrogatory request seeks to obtain facts, not contentions.

**Interrogatory No. 9**: Set forth and describe how NARS' alleged failure to send reservation of rights letters and/or failure to update reservation of rights letters with respect to the Harper Action caused Plaintiff damage.

> **Response to Interrogatory No. 9**:    Starr did not pay any indemnity or defense attorney fees in the Harper Action.

**Interrogatory No. 10**: With respect to the Harper Action, set forth the names of each individual or entity that Starr claims NARS failed to send or timely send a reservation of rights letter to and

for each individual or entity, state when Starr claims NARS should have first sent a reservation of rights letter.

           **Response to Interrogatory No. 10**:  Starr did not pay any indemnity or defense attorney fees in the Harper Action.

**Interrogatory No. 11**: Set forth and itemize each of the defense costs Starr allegedly had to pay as a result of NARS' alleged failure to send reservation of rights letters and/or failure to update reservation of rights letters with respect to the Harper Action.

           **Response to Interrogatory No. 11**:  Starr did not pay any indemnity or defense attorney fees in the Harper Action.

**Interrogatory No. 12**: Set forth and describe how NARS' alleged failure to send reservation of rights letters and/or failure to update reservation of rights letters with respect to the Seashore Action caused Plaintiff damage.

           **Response to Interrogatory No. 12**:  There was uncertainty under South Carolina law, which governed the interpretation of the Starr Policies, concerning whether an insurer is estopped from, or has otherwise waived the right to assert coverage defenses, if the insurer fails to timely issue a reservation of rights addressing the coverage defenses at issue. In the Seashore Action, which was filed on December 8, 2015, NARS sent out a reservation of rights letter to Ocean Keyes Development, LLC on January 6, 2016, but did not send out a reservation of rights letter to Keye Construction, Inc. and Russell Baltzer until April 4, 2017. NARS did not update the January 6, 2016reservation of rights letter to Ocean Keyes Development, LLC until April 4, 2017.

**Interrogatory No. 13**: With respect to the Seashore Action, set forth the names of each individual or entity that Starr claims NARS failed to send or timely send a reservation of rights letter to and for each individual or entity, state when Starr claims NARS should have first sent a reservation of rights letter.

> **Response to Interrogatory No. 13**:  At a minimum, NARS failed to send, or timely send, a reservation of rights letter to Russell Baltzer. Additionally, NARS should have sent timely reservation of rights letters to any individual or entity that was an insured under the Starr Policies who was named as a defendant in the Seashore Action, and any individual or entity that could argue that it was an insured entitled to a defense and indemnification under the Starr Policies. NARS should have first sent a reservation of rights letter as soon as it became evident that a coverage defense or policy defense may exist. If there was a justifiable reason for the delay in sending the reservation of rights letter, that reason should have been documented in the claim file.

**Interrogatory No. 14**: Set forth the basis of Starr's contention that if NARS had issued a reservation of rights letter to Ocean Keyes Development, Inc. with respect to the Seashore Action earlier, Starr could have paid a smaller or no indemnity payment to settle the Seashore Action. To the extent Starr alleges it could have made a smaller indemnity payment to settle the Seashore Action, set forth the amount of the reduced indemnity payment that Starr alleges it could have paid to settle the Seashore Action.

> **Response to Interrogatory No. 14**:  There was uncertainty under South Carolina law, which governed the interpretation of the Starr Policies, concerning whether an insurer is estopped from, or has otherwise waived the right to assert coverage

defenses, if the insurer fails to timely issue a reservation of rights addressing the coverage defenses at issue. If NARS had raised the coverage issues sooner, Starr could have filed the Declaratory Judgment Action much earlier than it did and potentially paid nothing in indemnity. On the other hand, QBE Insurance Company, the carrier that insured Keye Real Estate, Inc. and Ocean Keyes Development, LLC for the two years immediately before Starr, resolved all of the Underlying Ocean Keyes Matters for a lump sum payment in the amount of $750,000.00, $1,737,500.00 less than Starr paid in indemnity. Starr paid $562,500.00 in indemnity to settle the Seashore Action, which was 23% of the total paid in indemnity to settle the Underlying Ocean Keyes Matters. If Starr paid the same $750,000.00 as QBE to resolve all of the Underlying Ocean Keyes Matters, and the percentage applied to each matter stayed the same, Starr would have paid $169,597.99 in indemnity to settle the Seashore Action, which is $392,902.01 less than it actually paid.

**Interrogatory No. 15**: Set forth and itemize each of the defense costs Starr allegedly had to pay as a result of NARS' alleged failure to send reservation of rights letters and/or failure to update reservation of rights letters with respect to the Seashore Action.

> **Response to Interrogatory No. 15**: Starr objects to this interrogatory as it seeks information that is not permitted under Local Civil Rule 33.3(C). In that regard, contention interrogatories are not to obtain facts, but rather to narrow the issues that will be addressed at trial and to enable the propounding party to determine the proof required to rebut the respondent's position. This interrogatory request seeks to obtain facts, not contentions.

**Interrogatory No. 16**: Set forth and itemize each of the attorneys' fees and expenses that Starr alleges NARS improperly paid to defend Keye Construction, Inc. in the Underlying Ocean Keyes Matters.

> **Response to Interrogatory No. 16**:  Starr objects to this interrogatory as it seeks information that is not permitted under Local Civil Rule 33.3(C). In that regard, contention interrogatories are not to obtain facts, but rather to narrow the issues that will be addressed at trial and to enable the propounding party to determine the proof required to rebut the respondent's position. The parties exchanged significant document discovery and Defendant deposed three Starr witnesses, two fact witnesses and a 30(b)(6) witness. This interrogatory request seeks to obtain facts, not contentions.

**Interrogatory No. 17**: Set forth and itemize each of the attorneys' fees and expenses that Starr alleges NARS improperly paid to defend Russel Baltzer in the Underlying Ocean Keyes Matters.

> **Response to Interrogatory No. 17**:  Starr objects to this interrogatory as it seeks information that is not permitted under Local Civil Rule 33.3(C). In that regard, contention interrogatories are not to obtain facts, but rather to narrow the issues that will be addressed at trial and to enable the propounding party to determine the proof required to rebut the respondent's position. The parties exchanged significant document discovery and Defendant deposed three Starr witnesses, two fact witnesses and a 30(b)(6) witness. This interrogatory request seeks to obtain facts, not contentions.

**Interrogatory No. 18**: Set forth and itemize each of the attorneys' fees and expenses that Starr alleges NARS improperly paid to defend Marc Hyman in the Underlying Ocean Keyes Matters.

**Response to Interrogatory No. 18**:  Starr objects to this interrogatory as it seeks information that is not permitted under Local Civil Rule 33.3(C). In that regard, contention interrogatories are not to obtain facts, but rather to narrow the issues that will be addressed at trial and to enable the propounding party to determine the proof required to rebut the respondent's position. The parties exchanged significant document discovery and Defendant deposed three Starr witnesses, two fact witnesses and a 30(b)(6) witness. This interrogatory request seeks to obtain facts, not contentions.

**Interrogatory No. 19**: To the extent not set forth and itemized in response to Demands Numbers 16, 17 and 18 *supra*, set forth and itemize any additional attorney's fees and/or expenses that Starr contends that NARS improperly paid with respect to the Underlying Ocean Keyes Matters.

**Response to Interrogatory No. 19**:  Starr objects to this interrogatory as it seeks information that is not permitted under Local Civil Rule 33.3(C). In that regard, contention interrogatories are not to obtain facts, but rather to narrow the issues that will be addressed at trial and to enable the propounding party to determine the proof required to rebut the respondent's position. The parties exchanged significant document discovery and Defendant deposed three Starr witnesses, two fact witnesses and a 30(b)(6) witness. This interrogatory request seeks to obtain facts, not contentions.

**Interrogatory No. 20**: With respect to the Beach Villas Action, describe and itemize the damages Starr contends it incurred as a result of NARS allegedly failing to use Adair Horne & Associates as an independent adjuster.

**Response to Interrogatory No. 20**:  Starr objects to this interrogatory as it seeks information that is not permitted under Local Civil Rule 33.3(C). In that regard, contention interrogatories are not to obtain facts, but rather to narrow the issues that will be addressed at trial and to enable the propounding party to determine the proof required to rebut the respondent's position. The parties exchanged significant document discovery and Defendant deposed three Starr witnesses, two fact witnesses and a 30(b)(6) witness. This interrogatory request seeks to obtain facts, not contentions.

**Interrogatory No. 21**: With respect to the Lakeside Action, describe and itemize the damages Starr contends it incurred as a result of NARS allegedly failing to use Adair Horne & Associates as an independent adjuster.

**Response to Interrogatory No. 21**:  Starr objects to this interrogatory as it seeks information that is not permitted under Local Civil Rule 33.3(C). In that regard, contention interrogatories are not to obtain facts, but rather to narrow the issues that will be addressed at trial and to enable the propounding party to determine the proof required to rebut the respondent's position. The parties exchanged significant document discovery and Defendant deposed three Starr witnesses, two fact witnesses and a 30(b)(6) witness. This interrogatory request seeks to obtain facts, not contentions.

**Interrogatory No. 22**: With respect to the Harper Action, describe and itemize the damages Starr contends it incurred as a result of NARS allegedly failing to use Adair Horne & Associates as an independent adjuster.

**Response to Interrogatory No. 22**:  Starr objects to this interrogatory as it seeks information that is not permitted under Local Civil Rule 33.3(C). In that regard, contention interrogatories are not to obtain facts, but rather to narrow the issues that will be addressed at trial and to enable the propounding party to determine the proof required to rebut the respondent's position. The parties exchanged significant document discovery and Defendant deposed three Starr witnesses, two fact witnesses and a 30(b)(6) witness. This interrogatory request seeks to obtain facts, not contentions.

**Interrogatory No. 23**: With respect to the Seashore Action, describe and itemize the damages Starr contends it incurred as a result of NARS allegedly failing to use Adair Horne & Associates as an independent adjuster.

**Response to Interrogatory No. 23**:  Starr objects to this interrogatory as it seeks information that is not permitted under Local Civil Rule 33.3(C). In that regard, contention interrogatories are not to obtain facts, but rather to narrow the issues that will be addressed at trial and to enable the propounding party to determine the proof required to rebut the respondent's position. The parties exchanged significant document discovery and Defendant deposed three Starr witnesses, two fact witnesses and a 30(b)(6) witness. This interrogatory request seeks to obtain facts, not contentions.

STARR INDEMNITY & LIABILITY COMPANY

By: ____/s/ Rodrick Reed_____

Objections by:
____/s/ Ross M. Chinitz_____
Ross M. Chinitz
Starr Insurance Holdings, Inc.

13

## <u>VERIFICATION</u>

I, Rodrick Reed, have read the foregoing Plaintiff Starr Indemnity & Liability Company's Responses and Objections to Local Rule 33.3(C) Contention Interrogatories Directed to Plaintiff, Starr Indemnity & Liability Company, by Defendant North American Risk Services, Inc. and believe, based on reasonable inquiry, that the answers contained therein are true and correct to the best of my information, knowledge, and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on November 4, 2020.

         /s/ Rodrick Reed
         Rodrick Reed

14

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 4th day of November 2020, Plaintiff Starr Indemnity

& Liability Company served its objections and answers in response to Defendant's Contention

Interrogatories via e-mail on counsel for Defendant, Andrew S. Kowlowitz and Shari Sckolnick,

Furman Kornfeld & Brennan, LLP, 61 Broadway, 26th Floor, New York, New York 10006,

*akowlowitz@fkblaw.com*, and *shari.scholnick@gmail.com*.

Dated: November 4, 2020                     STARR INSURANCE HOLDINGS, INC.

                                               /s/ Ross M. Chinitz
                                        Ross M. Chinitz
                                        399 Park Avenue, 3rd Floor
                                        New York, New York  10022
                                        646-227-6409
                                        *ross.chinitz@starrcompanies.com*
                                        *Attorneys for Plaintiff*
                                        *Starr Indemnity & Liability Company*

# EXHIBIT C

**Shari Sckolnick, Esq.**

| | |
|---|---|
| **From:** | Ross Chinitz <Ross.Chinitz@starrcompanies.com> |
| **Sent:** | Monday, November 23, 2020 5:40 PM |
| **To:** | Shari Sckolnick, Esq. |
| **Cc:** | Andrew S. Kowlowitz, Esq. |
| **Subject:** | RE: Starr v. NARS; FKB File.: 315.013 - Follow-up to Meet and Confer Call from this Morning |

**[EXTERNAL]** This email originated from outside of **FKB.** Do not click links or open attachments unless you trust the sender and know the content is safe.

Shari –

Please see my responses below in red.

Ross M. Chinitz
Senior Counsel – Recovery & Collections
Starr Insurance Holdings, Inc.
Direct: 646-227-6409
Cell: 917-691-3096

**From:** Shari Sckolnick, Esq. <ssckolnick@fkblaw.com>
**Sent:** Monday, November 16, 2020 10:05 AM
**To:** Ross Chinitz <Ross.Chinitz@starrcompanies.com>
**Cc:** Andrew S. Kowlowitz, Esq. <akowlowitz@fkblaw.com>
**Subject:** Starr v. NARS; FKB File.: 315.013 - Follow-up to Meet and Confer Call from this Morning

**[External]** This email originated from outside of Starr.

Dear Ross –

In follow-up to our meet and confer telephone call this morning regarding Starr's Responses to NARS' contention interrogatories, the following are Starr's responses which NARS' believes are incomplete/non-responsive and for which we request supplemental responses:

- Interrogatories 1, 5, and 12 – As discussed, NARS' responses are incomplete as they do not provide NARS' contentions regarding proximate causation. As you aware, to sustain a claim for breach of contract, New York law requires the following three elements: (1) the existence of a contract; (2) breach; and (3) damages resulting from, or caused by, that breach. Diesel Props. S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011); Nat'l Market Share, Inc. v. Sterling Nat'l Bank, 392 F.3d 520, 525 (2d Cir. 2004). A breach is a proximate cause of damages if it is a substantial factor in producing those damages. Point Prods. A.G. v. Sony Music Entm't Inc., 215 F.Supp.2d 336, 344 (S.D.N.Y. 2002). And, as recently set forth by Justice Ostrager, "[g]enerally, it is for the trier of fact to determine the issue of proximate cause [and] the issue of proximate cause may be decided as a matter of law where only one conclusion may be drawn from the established facts " *quoting Lola Roberts Beauty Salon, Inc. v Leading Ins. Group Ins. Co., Ltd.,* 160 AD3d 824, 826 (2d Dep't 2018) (citations omitted). Here, Starr plead that there was a contract which was breached by NARS, and that the breach caused damage to Starr. It is now up to the trier of fact to determine if the breach was a proximate cause of the damage. Accordingly,

Starr appropriately answered these questions and will not be supplementing its responses. Notwithstanding the foregoing, and in a good faith effort to avoid motion practice, Starr supplements its response to state: the failure of NARS to issue and/or update the reservation of rights letters coupled with the uncertainty of South Carolina law concerning the effect of same, forced Starr into a position of having to cover the subject claims.

- Interrogatories 2, 6 and 14 – As discussed, NARS' responses are incomplete as they do not discuss/address/identify Starr's contentions as to when coverage defenses first became evident in the underlying matters. Starr appropriately answered these questions and will not be supplementing its responses. Notwithstanding the foregoing, and in a good faith effort to avoid motion practice, Starr supplements its response to state: the failure of NARS to send and/or update the reservation of rights letters until October 13, 2015, to Ocean Keyes Development and April 4, 2017, to Keye Construction and Baltzar were sufficient delays to raise a question as to the timeliness of same under South Carolina law.

- Interrogatories 4,8,15, 16, 17, 18, 19, 20, 21, 22 and 23 – As discussed, Starr refused to provide any responses to these demands claiming they seek information that is not permitted under Local Rule 33.3(c).  We disagree entirely and believe complete responses should be provided.  These demands seek discoverable information  regarding Starr's claims and contentions that we have consistently sought to procure from Starr throughout discovery, for which Starr has consistently refused to provide. Starr appropriately answered these questions and will not be supplementing its responses.

Please review in the next couple of days and let us know if Starr is willing to provide supplemental responses to any/all of the interrogatories so we can either avoid a potential discovery motion or narrow the issues.

Thanks,
Shari



**Shari Sckolnick, Esq.**
570 Taxter Road, 5th Floor
Elmsford, New York 10523
Tel:914-920-4000
Fax:914-347-3898

ssckolnick@fkblaw.com
Bio | Linkedin
www.fkblaw.com

*** Our attorneys and staff are working remotely as required by government directives during the COVID-19 crisis.  Accordingly, our office will only be transmitting and accepting communications and pleadings via E-mail. ***

CONFIDENTIALITY NOTICE: This email is intended only for the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited, and you are requested to please notify us immediately by telephone, and return the original message to us at the above address. Thank you.